UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


| | | |
|---|---|---|
| **LEIGH COLE, SR.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 07-3049** |
| | * | |
| **NORTHROP GRUMMAN SHIP SYSTEMS,** | * | |
| **INC, ET AL.** | * | **SECTION "L"(1)** |


<u>**ORDER & REASONS**</u>

Before this court is the Plaintiff's Motion to Remand (Rec. Doc. No. 60).  For the

following reasons, the Motion to Remand is GRANTED.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiff filed this action in the Civil District Court for Orleans Parish, Louisiana on

April 17, 2007.  He seeks damages for personal injury due to alleged asbestos exposure while

working as a shipyard worker for Avondale Shipyards ("Avondale") in 1966 and 1967 and while

working for South Central Bell in 1965 and 1966.  The Plaintiff alleges that his exposure to

injurious levels of airborne asbestos fibers and the Defendants' tortious acts consequently caused

him to contract malignant mesothelioma, a fatal cancer of the lining of the lungs.  The Plaintiff

asserts claims of negligence for failure to provide a safe working environment and failure to

warn, strict premises liability, and strict *garde* liability against Northrop Grumman Ship

Systems, Inc. ("Northrop"), the owner of Avondale; South Central Bell; OneBeacon Insurance

Company, the liability insurers of Northrop's executive officers; and several individual Northrop

executive officers, including Peter Territo.  Additionally, the Plaintiff asserts causes of action in

strict liability and negligence against various parties who allegedly manufactured, sold and

supplied unreasonably dangerous asbestos-containing products which allegedly contributed to

the Plaintiff's asbestos exposure and his resulting cancer.

On May 29, 2007, Defendant Peter Territo removed this case to federal court on the basis of the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1).  Territo states that, assuming the Plaintiff was exposed to asbestos at Avondale, the exposure occurred while the Plaintiff was working on vessels built for the United States and the use of asbestos-containing materials was required and controlled by the United States.

The Plaintiff subsequently filed a Motion to Remand on June 7, 2007 arguing that the Court lacks subject matter jurisdiction.[1]  Defendant Territo thereafter filed a memorandum in opposition, along with OneBeacon Insurance Company.  Prior to the Court deciding the motion, the United States Judicial Panel on Multidistrict Litigation (the "JPML") ordered that this case be transferred to the Eastern District of Pennsylvania for inclusion in MDL No. 875.[2]  The transferee court then issued a suggestion that this case should be returned "to the United States Court for the Eastern District of Louisiana for the resolution of all outstanding motions relating to the jurisdiction of this matter in federal court."[3]  According to the transferee court, should the Court deny Plaintiff's motion to remand, "this case should be transferred back to the MDL 875 Transferee Court for further action."[4]  Prior to the Court receiving the conditional transfer order from the JPML, the Plaintiff re-filed his motion to remand.[5]  The Plaintiff re-filed his motion to

---

[1]     Rec. Doc. No. 16.  The Plaintiff also moved for Rule 11 Sanctions, withdrew this request (Rec. Doc. 21)

[2]     Rec. Doc. No. 46.

[3]     Rec. Doc. No. 62, Exhibit 1.

[4]     *Id.*

[5]     Rec. Doc. No. 55.

remand a second time after the Court received the conditional transfer order.[6]  The Court now

considers the merits of the Plaintiff's motion.

## II.    LAW & ANALYSIS

The removing defendant carries the burden of showing the existence of federal

jurisdiction.  *See Jernigan v. Ashland Oil, Inc.*, 989 F.3d 812, 815 (5th Cir. 1993).  As a general

matter, the removal statute is to be construed narrowly and in favor of remand to state court.  *See*

*Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941).  Indeed, "doubts regarding whether

removal jurisdiction is proper should be resolved against federal jurisdiction."  *Acuna v. Brown*

*& Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).  Accordingly, all disputed questions of fact must

be resolved in favor of the non-moving party.  *See Burden v. Gen. Dynamics Corp.*, 60 F.3d 213,

216 (5th Cir. 1995).

The Defendant bases its removal on the Federal Officer Removal Statute, 28 U.S.C. §

1442(a)(1), which provides, in pertinent part:

> (a)  A civil action . . . commenced in a State Court against any of the following may
> be removed by them to the district court of the United States for the district and
> division embracing the place wherein it is pending:
>
> > (1)  The United States . . . or any officer *(or any person acting under that*
> > *officer)* of the United States or of any agency thereof, sued in an official or
> > individual capacity for any act under color of such office . . . .

28 U.S.C.  1442(a)(1) (emphasis added).

Though generally remand to state court is favored when removal jurisdiction is

questionable, removal jurisdiction under the Federal Officer Removal Statute must be broadly

construed.  *See Willingham v. Morgan*, 395 U.S. 402, 407 (1969); *see also Watson v. Philip*

_____

[6]        Rec. Doc. No. 60.

*Morris Companies,* 551 U.S. __ (2007) (internal citations omitted).  The Court must interpret the statute liberally, resolving any factual disputes in favor of federal jurisdiction.  *See Louisiana v. Sparks*, 978 F.2d 226 (5th Cir. 1992).

 However, liberal construction does not mean that the statute's broad language should be interpreted to imply limitless application.  *Watson*, 551 U.S. at 3 (reviewing statutory history, context, purpose and language and finding that fact that federal agency directs, supervises, and monitors company's activities in considerable detail does not bring company within scope of statute's language).  As the purpose of this statute is to provide a federal forum in cases where federal officials are entitled to raise a defense arising out of their official duties*,  see Arizona v. Manypenny*, 451 U.S. 232, 241 (1981); *Winters v. Diamond Shamrock Chemical Co.*, 149 F.3d 387, 398 (5th Cir. 1998), the United States Supreme Court has consistently repeated that the "statute authorized removal by private parties 'only' if they were authorized to act with or for federal officers or agents in affirmatively executing duties under...federal law."  *Id.* at 7.

 The Federal Officer Removal Statute only confers jurisdiction if the removing defendant establishes that the tortfeasor or involved individual is a "person,"[7] who (1) acted under color of federal authority when committing the allegedly tortious conduct, (2) can demonstrate a causal nexus between the plaintiff's claims and defendant's actions performed under color of office, and lastly, (3) can assert a federal defense to the plaintiff's claims.  *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 398 (5th Cir. 1998) (applying test elucidated by the United States Supreme Court in *Mesa v. California*, 489 U.S. 121, 131-32 (1989)).

---

[7] In the present case, the parties do not dispute that the removing Defendant, Peter Territo, or Northrop is a "person" for purposes of the statute.  *See Winters*, 149 F.3d at 398 (corporate entities qualify as "persons" within statute's meaning).

Defendant Territo argues that he acted under color of federal authority because (1) U.S. Government inspectors closely monitored the shipyard's compliance on a daily basis due to contractually-stipulated safety regulations; (2) federal asbestos safety regulations which set standards for safe daily exposure to asbestos were specifically incorporated into the contracts; (3) U.S. Government inspectors constantly monitored the ship construction process for compliance with all contract terms; and (4) the use of asbestos insulation was required by the U.S. Government.  He further argues that a causal connection can be demonstrated between his acts committed at the direction of the federal government and the plaintiff's claims, and that he can assert colorable federal defenses as he is entitled to immunity under the government contractor defense and the Longshore Harbor Workers Compensation Act ("LHWCA").

The Court now addresses whether this argument satisfies the *Mesa* test for all of  the Plaintiff's claims.

Courts frequently look at the "federal direction" and "causal nexus" prongs of the *Mesa* test together as they are so closely related– the Defendant must establish a "causal nexus" between the alleged tortious conduct and the acts performed by the defendant under the direction of a federal officer.  *See, e.g. Winters,* 149 F.3d at 398.  Determination of the "federal direction" prong depends on "the level of official control, and perhaps more to the point, whether the defendant acted sufficiently under the direction of a federal officer in the performance of the acts that form the basis of the suit." *Guillory*, 872 F. Supp. at 346 (internal citation omitted).  The United States Supreme Court recently interpreted the meaning of the words "acting under" in the context of Section 1442(a)(1).  The Court elucidated that "the word 'under' must refer to what has been described as a relationship that involves 'acting in a certain capacity, considered in relation to one holding a superior position or office.'"  *Watson*, 551 U.S.

at 7 (internal citation omitted).  "That relationship typically involves 'subjection, guidance, or control." *Id*.  "[T]he private person's "acting under" must involve an effort to assist, or to help carry out, the duties or tasks of a federal superior." *Id.* (finding private person's mere compliance or non-compliance with law does not fall within statute scope's and constitute statutory basis for removal).  Thus, "[f]ederal direction requires more than general auspices of a federal officer, or participation in a regulated industry*." Bradley v. Northrop Grumman Systems*, 2007 WL 115246, at *2 (E.D. La. 4/12/07) (citing *Savoie v. Northrop Grumman Ship Systems, Inc*., No.  05-02086 (E.D. La. 2005) and *Mouton v. Flextallic, Inc.*, 1999 WL 225438, at *2 (E.D. La. 4/19/99)); *Ryan v. Dow Chemical Co.*, 781 F.Supp. 934, 947 (E.D.N.Y. 1992). "[T]he defendant must show strong government intervention and the threat that a defendant will be sued in state court based on actions which follow federal direction." *Bradley*, 2007 WL 115246, at *2 (citing *Mouton*, 1999 WL 225438, at *2-3) (internal quotation omitted).

As regards the Plaintiff's failure to warn claims, the Defendant's argument that he was acting under the authority of a federal officer due to contractually mandated regulatory compliance and government monitoring is negated by the Plaintiffs' submission of affidavits and depositions which prove otherwise.  The Plaintiff submits the affidavit of Mr. Felix Albert, a United States Navy ship inspector at Avondale from 1965 to 1976.  Mr. Albert states in his sworn affidavit that

> Avondale employees did not work under the direct orders of a ship inspector and Avondale employees did not act under the direction of a ship inspector. The United States government inspectors neither monitored nor enforced safety regulations.  On the job safety during the construction of vessels for the United States government was the responsibility of Avondale Shipyards' safety department.

Pl.'s Ex. 14 (Affidavit of Felix Albert).

The Plaintiff further points to Mr. Territo's deposition testimony in which he states that the shipyard's safety department was independent from and not under the control of the federal officers aboard the vessels in question.   Pl.'s Ex. 15 (Deposition of Peter Territo, 9/26/96, cited in Gauthe case).  Moreover, Eddie Blanchard, the shipyard's Superintendent of Outfitting during the relevant period and a former executive officer, stated that no federal officer directed or controlled the safety department, the construction of commercial vessels was done under general regulations, and no federal officer had authority over Mr. Territo or Mr. Blanchard himself.  Pl.'s Ex. 16 (Deposition of Eddie Blanchard, 9/25/96).

Lastly, the Plaintiff points to a line of factually-similar cases decided in this District and one from California which held that the removing defendant could not prove that the federal government restricted the defendant's ability to warn the plaintiff(s) of asbestos' dangers.  *See Gauthe v. Asbestos Corp.*, 1997 WL 3255 (E.D. La. 1997); *Porche v. Flexitalic, Inc.*, 1996 WL 603919 (E.D. La. 1996); *Savoie v. Northrop Grumman*, No. 05-2086 (E.D. La. 2005); *Mouton v. Flexitallic, Inc.*, 1999 WL 225438 (E.D. La. 4/19/99); *Guidroz v. Anchor Packing*, No. 98-3709 (E.D. La. 1999); and *Overly v. Raybestos-Manhattan*, 1996 WL 532150 (N.D. Ca. 1996). These cases held that, in the context of failure to warn, the government, at a minimum, had to provide some level of direct control over warnings and the defendant failed to establish that this was the case.  This in turn negated the existence of a causal nexus because the defendant could not show that the government's direction and control of activities directly interfered with the defendant's ability to fulfill its state law obligation to warn employees of safety hazards.[8]  *See*

_____

[8]  For example, in *Mouton*, the court wrote that

[a]lthough Avondale arguably "acted under" the Navy's direction when working by detailed instructions to build the destroyers, the specifications under the contract specified technical parameters, and only had more general

*Maryland v. Soper*, 270 U.S. 9, 22 (1926) ("There must be come causal connection between what the officer has done under asserted federal authority and the state prosecution.  It must appear that the [state] prosecution has arisen out of the acts done by the officer under color of federal authority and in enforcement of federal law.").  Thus, under the causal nexus prong, there was no basis for federal officer jurisdiction for the failure to warn claims.  *See McFarlain*, 05-1406, at 4.

Moreover, even assuming that Defendant Territo could establish the "federal direction" and "causal nexus prongs" for the failure to warn claims, he cannot establish that a colorable federal defense exists for these claims.  The removing defendant is not required to establish that their federal defense is meritorious in order to satisfy § 1442(a)(1), but must only demonstrate that a *colorable* claim to such defense has been made.  *Guillory v. Ree's Contract Serv., Inc.*, 872 F. Supp. 344, 346 & n.4 (S.D. Miss. 1994) (*citing Mesa,* 489 U.S. at 124-25).  The Defendant asserts that he has a colorable claim to a contractor defense as articulated in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 513 (1988), which holds that "[l]iability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the about the dangers in the use of the equipment that were known to the supplier but not to the United States."

---

references to safety regulations.  The federal government provided no direction on warnings when using asbestos, and further did not prevent Avondale from taking its own safety precautions above the minimum standards incorporated in the federal contracts.  Thus, the Court finds that Avondale has failed to establish a causal connection between the Navy's direction pursuant to the design contracts and plaintiff's failure to warn claims.

*Mouton*, 1999 WL 225438, at * 3.

Additionally, a uniquely federal interest must be involved and a conflict must exist between the federal policy and the state duty of care. *Id.* at 506-08. Though *Boyle* involved a products liability manufacturing defect case, it has been extended to the failure to warn context as well. *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 400-01 (5th Cir. 1998) (applying *Boyle* test to instance where government prohibited contractor from placing warning on products). However, *Boyle's* government contractor defense in the failure to warn context requires that a federal authority exercise *some* degree of *direct* influence over the contractor's activities with respect to warnings. *See McFarlain,*05-1406,  at 5-6, 9-10. Thus, it is unavailable as a colorable federal defense in this case.

The Defendants next argues that for application of  *Lalonde v. Delta Field Erection*, 1998 WL 34301466 (M.D. La. Aug. 6, 1998), which held that in a failure to warn case, when the federal government does not prevent a contractor-defendant from issuing warnings, removal may still be appropriate. *See McFarlain,* 05-1406, at 8.  The *Lalonde* case was decided before the United States Supreme Court issued *Boyle*, which set parameters for immunity under the government contractor defense, including the requirement that a conflict exist between the contractor's federal authority and its duties under state law. *McFarlain*, 05-1406, at 8.  This argument must be rejected.

Additionally, courts which have looked at the Defendant's other asserted colorable defense under the LHWCA in the context of failure to warn have consistently rejected this defense as well. *See, e.g., McFarlain,*05-1406, at 6; *Mouton,*1999 WL 225438, at *3-4; *Bartley*, 1996 WL 68482, at *4; *Gauthe*, 1997 WL 3255, at *3-4; *Bradley*, 2007 WL 1115246, at *3, *Sheppard v. Northrop Grumman Systems Corp.,* 2007 WL 1550992, at *6 (E.D. La. 5/24/07).

Thus, the 1442(a)(1) jurisdictional requirements are not met for the failure to

warn claims.

## III.   CONCLUSION

Accordingly, the Plaintiff's  Motion to Remand is GRANTED and IT IS ORDERED

that this case is hereby REMANDED to the Civil District Court for the Parish of Orleans, State

of Louisiana..

New Orleans, Louisiana, this 3rd day of July, 2008.

_____

UNITED STATES DISTRICT JUDGE